**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ALEJANDRO BURGOS-ORTEGA,
*Defendant-Appellant*.

No. 13-50237

D.C. No.
3:12-cr-05168-BEN-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted
December 8, 2014—Pasadena, California

Filed February 5, 2015

Before: Susan P. Graber, Ronald M. Gould,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

**SUMMARY**[*]

**Criminal Law**

The panel affirmed a sentence for illegal re-entry in a case in which the district court applied a 12-level increase pursuant to U.S.S.G. § 2L1.2(b)(1)(A) after determining that the defendant's 1992 conviction for delivery of heroin under Revised Code of Washington § 69.50.401(a)(1)(i) was for a "drug trafficking offense."

The defendant argued that § 69.50.401 is categorically overbroad because it criminalizes manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance without containing an exemption for "administering," even though federal law exempts "administering" from the definition of distribution. The panel rejected this contention because the defendant has not shown the realistic probability of prosecution for administering a drug.

The panel held that the district court did not rest its sentence on any clearly erroneous fact, and rejected the defendant's claim that his sentence was substantively unreasonable.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kent D. Young (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Laura E. Duffy, Bruce R. Castetter, Mark R. Rehe (argued), Anne K. Perry, United States Attorney's Office, San Diego, California, for Plaintiff-Appellee.

**OPINION**

CALLAHAN, Circuit Judge:

Defendant-Appellant Alejandro Burgos-Ortega pled guilty to illegal re-entry in violation of 8 U.S.C. § 1326 and received a 46-month sentence. Burgos-Ortega challenges his sentence on appeal, arguing that 1) the district court erred when it applied a 12-level increase to his offense level based on a Washington State drug conviction; 2) the district court erred by basing its sentence on facts not in the record; and 3) his above-Sentencing Guidelines sentence was substantively unreasonable. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and we affirm.

I

Burgos-Ortega is a citizen of Mexico who crossed into the United States near the San Ysidro Port of Entry on November 19, 2012. Burgos-Ortega was arrested the next day and admitted that he was in the United States illegally. He later pled guilty to illegal re-entry in violation of 8 U.S.C. § 1326(a) and (b).

Burgos-Ortega's presentence report ("PSR") calculated his Guidelines range as 18 to 24 months and recommended a 24-month sentence. This recommendation resulted from a base offense level of 8, a 12-level increase based on a prior drug trafficking offense,[1] a 3-level decrease based on acceptance of responsibility, and a 4-level downward departure based on his participation in a "fast track" prosecution. The prior offense leading to the 12-level increase was a 1992 Washington State conviction under Revised Code of Washington ("RCW") § 69.50.401(a)(1)(i)[2] for "Delivery of Heroin."[3] The Guidelines range was based on the total offense level of 13 and two prior criminal convictions for illegal re-entry in 1998 and 2006, which resulted in 70-month and 46-month sentences, respectively.[4]

---

[1] U.S.S.G. § 2L1.2(b)(1)(A) provides for a 12-level increase in the offense level if the defendant has a prior conviction for a felony drug trafficking offense for which the sentence imposed exceeded 13 months.

[2] RCW § 69.50.401(a) (1992) stated: "Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." Unless otherwise noted, we refer to the 1992 version of the statute.

[3] The PSR wrongly identified the date of this offense as November 13, 1996, though the parties agree that this offense occurred in 1992. The PSR indicated that Burgos-Ortega also had felony convictions in Utah in 1994 and 1996. The PSR explained that these convictions were also felony drug trafficking offenses triggering the 12-level increase pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i), but that "only one such prior is needed" to trigger the increase.

[4] The PSR also indicated that Burgos-Ortega had been apprehended by immigration agents seven times and had been deported three times.

At sentencing, the Government recommended, and Burgos-Ortega requested, a 24-month sentence. Burgos-Ortega's counsel argued that while this proposed sentence was shorter than what he had received in the past for illegal re-entry, it was appropriate in light of a change in the Guidelines and the staleness of Burgos-Ortega's prior convictions. Counsel pointed specifically to a 2011 amendment to the Guidelines. The amendment reduced the offense level increase from 16 to 12 if the defendant's prior conviction was too old to receive criminal history points, as was the case here with Burgos-Ortega's 1992 Washington heroin conviction.

Burgos-Ortega's counsel also argued that he had a "diminishing criminal history apart from the illegal entries" and claimed that Burgos-Ortega's criminal record in the 1990s was "driven by his substance abuse," but he had been clean since 1996. Finally, Burgos-Ortega's counsel asserted that a 24-month sentence was appropriate because Burgos-Ortega had only come to the United States because he was worried about his children. He argued that now that Burgos-Ortega had reestablished contact with them, and given that his children planned to continue their relationship with him, including visiting him in Mexico, Burgos-Ortega had no reason to return at this point.[5]

At sentencing, the district court stated that it would "vary up" and impose an above-Guidelines sentence:

---

[5] Burgos-Ortega's attorney also argued that the court's concerns about deterrence could be allayed at least in part by imposing a term of supervised release after his prison sentence.

Now I have reviewed this file pretty carefully because I knew I was going to vary up. And I've heard the reasons for coming back into the United States. I'd be willing to bet you dollars to donuts that if I went and I got a transcript of the proceedings of his previous 1326's, he probably had a good excuse for coming back into the United States. Now I don't have those transcripts. But, you know, I do enough of these every Monday, I probably do more sentencings than many, many districts combined. And I hear it all the time. There is always, you know, reason to come back. They want to be with their family or what have you. And the story never changes in the sense that they come back.

The only thing that deters them from coming back is a sentence. That is it, plain and simple. And even that doesn't necessarily always work. So, you know, I have to consider – obviously, I've considered the fact that his prior conviction was stale. I've considered that. I've considered the fact that as a result of that, he gets a reduction in the Guideline calculations. I've considered the fact that in this district, because of the number of these cases that we have, we also have a fast-track program.

The district court also recounted Burgos-Ortega's criminal history, which included various drug charges and his first illegal reentry conviction, which had resulted in a 70-

month sentence.  The court then discussed his second illegal re-entry conviction:

> Then guess what, in 2006, he's again arrested for another 1326.  And this time, guess what, we did him a favor, and the favor was, we reduced the sentence that he got.  We went from 70 months down to 46 months. Now, his supervised release in this case expired on July 29th, 2012.  He was arrested on November 20th, 2012.  Now that's basically three months.  Three months after his supervised release expired, he came back into the United States.

The court also expressed concern about Burgos-Ortega's past problems with substance abuse and its fear that Burgos-Ortega would return to selling or using drugs again if he returned to the United States after deportation.

In light of Burgos-Ortega's history, the court determined that a Guidelines-range sentence was not appropriate in this case:

> I see absolutely, absolutely no reason, whatsoever, for why I would want to impose a sentence that is less than the last sentence he received.  I mean, it makes no sense. Logically, it makes absolutely no sense.  I might as well put him on probation if you ask me to impose a lesser sentence, or maybe give him a medal or certificate of achievement.

> The fact of the matter is, 70 months didn't work; 46 months didn't work. Now, frankly, I'd be half tempted to go above the 46-month sentence, but I'm not going to do that. I'm going to give him the benefit of the doubt. I'm going to impose the same sentence he received the last time. I've considered the Guidelines. I think the Guidelines in this case under-represent both his criminal history and fail to take into account the lack of deterrence or the protection of the public.

The district court ultimately held that the 18- to 24-month Guidelines-range sentence was inadequate and sentenced Burgos-Ortega to 46 months' imprisonment and a three-year term of supervised release.

Burgos-Ortega's attorney then objected, stating that the court had not reviewed any conviction documents for his 1992 Washington drug trafficking conviction that was the basis for the 12-level increase in his offense level. He also asserted that the PSR was insufficient proof to show that the 1992 conviction was for delivery of heroin. Burgos-Ortega's attorney also argued that the court overemphasized the deterrence aspect of 18 U.S.C. § 3553(a) and disregarded the particularized facts of Burgos-Ortega's case when it found that only an increased or similar sentence to his prior illegal re-entry convictions would be appropriate. Burgos-Ortega's attorney re-emphasized that Burgos-Ortega's reason for returning—to reunite with his family—meant that he was unlikely to repeat his crime.

The district court noted that these arguments were "just not very credible" because of the "holes and inconsistencies"

in Burgos-Ortega's story. Burgos-Ortega's counsel offered to provide additional information, but the court explained:

> Now, look, as I said before, if we got ahold [sic] of the transcript of the prior two convictions, I'm willing to bet you dollars to donuts that he had a, quote, good excuse, end of quote, for coming back into the United States.
>
> And I'd be willing to bet you dollars to donuts that if we looked at those two prior transcripts, there is probably something in there that he said, I'm not going to come back, judge, give me a chance, give me a break, and yet he comes back.
>
> What I was trying to point out is, you can fabricate all sorts of excuses for why people come back into the United States. I'm not saying they're not understandable. You know, I mean, given the choice of living in Mexico, living here, I'd much rather live here. The fact of the matter is, it's against the law. He's been told it's against the law.
>
> And I don't know what else you could have said, frankly, that would have changed that. . . . [Burgos-Ortega's desire to locate his children] is not an excuse for him to come back into the United States.

Burgos-Ortega renewed his objections to the sentence and subsequently filed a timely notice of appeal.

II

We review a district court's sentence for abuse of discretion. *United States v. Blinkinsop*, 606 F.3d 1110, 1114 (9th Cir. 2010). A district court abuses its discretion when it errs in its Guidelines calculation, imposes a sentence based on clearly erroneous facts, or imposes a substantively unreasonable sentence. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).

Burgos-Ortega first argues that the district court erred in calculating his Guidelines range when it relied on his 1992 Washington drug trafficking conviction without referring to any conviction documents. In his view, the statute that the conviction was based on, RCW § 69.50.401, is categorically overbroad because it criminalizes manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance without containing an exemption for "administering," even though federal law exempts "administering" from the definition of distribution.[6] Given the lack of this "administering" exception in the Washington statute, Burgos-Ortega contends that the court was required to apply the modified categorical approach to determine whether Burgos-Ortega was in fact convicted for administering heroin, relying on, among other things, our unpublished decision in *Le v. Holder*, 480 F. App'x 864 (9th Cir. 2012).

---

[6] Because Burgos-Ortega's arguments fail under de novo review, we assume, without deciding, that Burgos-Ortega properly preserved his argument that RCW § 69.50.401 is categorically overbroad based on its failure to include an exception for administering.

In determining whether a prior conviction qualifies for an enhancement under § 2L1.2, a sentencing court first applies the "categorical approach" from *Taylor v. United States*, 495 U.S. 575 (1990).  Under this approach,

> courts look only to the fact of conviction and the statutory definition of a prior offense to determine whether that prior offense can be used for a sentencing enhancement under the federal Guidelines.  If the state statute criminalizes conduct that would not constitute a drug trafficking offense under federal sentencing law, then a prior conviction under that statute does not categorically qualify as a basis for enhancing a defendant's sentence.

*United States v. Valdavinos-Torres*, 704 F.3d 679, 691 (9th Cir. 2012) (citation and internal punctuation omitted).  We review de novo whether a prior conviction qualifies as a "drug trafficking offense" under U.S.S.G. § 2L1.2(b)(1)(A). *Id.*

There does not appear to be any published case examining whether RCW § 69.50.401(a) is a categorical match for the generic drug trafficking offense.  However, we briefly examined this statute in *Le v. Holder*, 480 F. App'x at 865–67.[7]  Contrary to the government's contention, in *Le* we

---

[7] We also examined this statute in *United States v. Copas-Villegas*, 566 F. App'x 556 (9th Cir. 2014) (unpublished).  In *Copas-Villegas*, the defendant argued the statute was overbroad because it proscribed solicitation.  We assumed for the purposes of argument that the statute was categorically overbroad.  We nevertheless concluded that the defendant's conviction was an aggravated felony under the modified categorical approach, based on the defendant's written allocution submitted with his

did not merely assume that the statute was overbroad. Rather, we noted that RCW § 69.50.401(a) does not contain an exception for administering, in contrast to the federal statute:

> Le contends that conduct that falls under "deliver" in the state statute is broader than conduct that falls under "distribute" in the federal statute, and so Le's state conviction for intent to deliver does not constitute intent to distribute under [21 U.S.C.] § 841(a)(1). He relies on the fact that the federal definition for distribute "means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical," 21 U.S.C. § 802(11), but the state definition does not contain those exceptions, so he could have been convicted for dispensing or administering – behavior not criminalized under the federal generic statute.

*Id.* at 866.

However, *Le*, a non-binding unpublished memorandum disposition, did not address whether Washington State had actually ever obtained a conviction under RCW § 69.50.401(a) for delivery through a defendant's administration of the drug. In *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), the Supreme Court explained that a court must examine whether there was more than just a theoretical possibility that a defendant could be prosecuted for conduct that is outside of the federal generic statute:

---

guilty plea, in which he admitted that he possessed cocaine with the intent to deliver. *Id.* at 557.

> [I]n our view, to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Id.* at 193; *see also Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684–85 (2013) (quoting *Duenas-Alvarez*, 549 U.S. at 193). The Court noted that the defendant had failed to show a realistic possibility of prosecution for conduct outside the federal statute and concluded that the state statute at issue was not overbroad. *Duenas-Alvarez*, 549 U.S. at 193–94.

We recently applied *Duenas-Alvarez* in examining whether a state statute was categorically overbroad. In *Medina-Lara v. Holder*, 771 F.3d 1106 (9th Cir. 2014), we granted a petition for review after the Board of Immigration Appeals ("BIA") found the petitioner removable based on a 2005 California drug conviction for which he received a firearm sentencing enhancement. We held that the BIA erred when it found that the enhancement for carrying a firearm in violation of California Penal Code § 12022(c) constituted a categorical firearm offense, because the state statute that defined "firearm" at the time of the defendant's conviction

was overbroad. The state statute did not exempt antique firearms—which are exempted from the generic federal firearm offense—and recent California prosecutions demonstrated a realistic probability that the state could obtain a conviction even if the firearm was an antique. *Id.* at 1115–17; *see also United States v. Aguilera-Rios*, 769 F.3d 626 (9th Cir. 2014) (discussing prosecutions under Cal. Penal Code § 12022(c) for possession of antique firearms).

In contrast, in the unpublished opinion *United States v. Villeda-Mejia*, 559 F. App'x 387, 389 (5th Cir. 2014) (per curiam), the Fifth Circuit held that the defendant had not shown a realistic probability that RCW § 69.50.401(a), the statute before us in this appeal, was overbroad. Applying plain error review, the Fifth Circuit explained:

> Villeda-Mejia . . . argues that "delivery" under the Washington statute (but not the guidelines enhancement) includes "administering" such that he must prevail in light of *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), and *Descamps* [*v. United States*, 133 S. Ct. 2276 (2013)]. Neither case involved the same situation presented here. Unlike those cases, here Villeda-Mejia has not pointed to a Washington case applying this statute in an "administering" situation. Accordingly, it is far from clear that the Washington statute encompasses "administering." We have previously held that a "theoretical possibility" that a state statute would encompass conduct that is not part of the offense to which an enhancement would apply is insufficient to avoid the

> enhancement.  *United States v. Carrasco-*
> *Tercero*, 745 F.3d 192, 197–98 (5th Cir.
> 2014).  Certainly the idea that delivery under
> the Washington statute would encompass
> "administering" is not "clear or obvious" as
> required for plain error.  We also conclude
> that this "theoretical possibility" makes it
> inappropriate for us to exercise our discretion
> to correct any such error under the fourth
> prong of plain error review.

*Id*. at 389.[8]  Accordingly, the *Villeda-Mejia* court affirmed the defendant's sentence, which was based in part on a sentencing enhancement for his prior conviction under RCW § 69.50.401.  *Id.* at 388–89.  The Fifth Circuit later cited this discussion in a published opinion holding that a Texas statute was a categorical drug trafficking offense because the defendant had not shown a realistic probability that the statute criminalized conduct broader than the generic drug trafficking offense.  *United States v. Teran-Salas*, 767 F.3d 453, 460–61 (5th Cir. 2014), *petition for cert. filed*, ___U.S.L.W.___, (U.S. Dec. 15, 2014) (No. 14-7593).

We hold that Burgos-Ortega has not shown the realistic probability of prosecution for administering a drug required to establish that RCW § 69.50.401 is categorically overbroad.  Burgos-Ortega argues that it is theoretically possible that a defendant could be prosecuted for administering a controlled substance under RCW § 69.50.401, without pointing to any

---

[8] The *Villeda-Mejia* court applied plain error review because the defendant  did not object to the district court's determinations that his prior state court conviction under RCW § 69.50.401 was a drug trafficking offense and an aggravated felony.  359 F. App'x at 388.

case where a defendant was in fact prosecuted or convicted for administering a drug under this statute.  The fact that Burgos-Ortega has not identified such a case suggests that there is no realistic probability of prosecution under RCW § 69.50.401(a) for administering rather than delivering an illegal drug.

In contrast, in *Medina-Lara* and *Aguilera-Rios*, we cited several cases involving antique firearms convictions, which established the required realistic probability that state courts gave the applicable statute an overbroad interpretation.  *See also Macias-Carreon v. Holder*, 716 F.3d 1286, 1288 (9th Cir. 2013) (rejecting petitioner's claim that the state statute prohibiting possession of marijuana for sale punished conduct outside of the generic federal offense because this claim was "facially implausible and unaccompanied by a single citation to a case in which this has occurred").

Burgos-Ortega, however, argues that pursuant to *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc), and *United States v. Vidal*, 504 F.3d 1072, 1082 (9th Cir. 2007) (en banc), he need not show that anyone was actually convicted for administering under RCW § 69.50.401(a) because the statute is "overbroad on its face."  These cases are distinguishable because the state statute here does not expressly include conduct not covered by the generic offense, but rather is silent as to the existence of a parallel administering exception.  This is not, for example, a burglary statute that expressly reaches non-buildings, as discussed in *Grisel*.  If Burgos-Ortega's interpretation of *Grisel* and *Vidal* were correct, in *Medina-Lara*, we would not have needed to look at whether any felon-in-possession convictions in California involved antique firearms.

Moreover, it appears unlikely that a statute that made it illegal to "manufacture, deliver, or possess" a drug would be interpreted by Washington courts as allowing prosecution for administering a drug.  Under the applicable federal statute, "administer" is defined as:

> [T]he direct application of a controlled substance to the body of a patient or research subject by—
>
> (A) a practitioner (or, in his presence, by his authorized agent), or
>
> (B) the patient or research subject at the direction and in the presence of the practitioner, whether such application be by injection, inhalation, ingestion, or any other means.

21 U.S.C. § 802(2).  The Washington statute is focused on the production, sale, or possession of a drug, and it is implausible that a doctor, patient, or research subject would be prosecuted under RCW § 69.50.401(a) for administering a drug.

Thus, Burgos-Ortega's contention that RCW § 69.50.401 is overbroad on its face is unavailing, and we reject his claim of procedural error based on the 12-level increase for his 1992 Washington drug trafficking conviction.[9]

---

[9] Given that Burgos-Ortega has not shown more than a theoretical possibility that a defendant could be convicted of administering a drug under RCW § 69.50.401, we do not address the government's argument that, under Washington law, one cannot "deliver" a drug by administering it.  We also do not address the government's contention that Burgos-

III

Burgos-Ortega next argues that the district court clearly erred because its sentence was based on facts not found in the record. Specifically, Burgos-Ortega argues that the district court improperly speculated that he had offered good reasons for his prior two illegal re-entries when it rejected Burgos-Ortega's contention that he had no reason for returning to the United States in the future. In his view, the district court procedurally erred because there was no evidence in the record on his justifications for his prior re-entries.

Burgos-Ortega's argument is not persuasive. A district court procedurally errs at sentencing if it imposes a sentence based on "clearly erroneous facts," and "[a] finding is clearly erroneous if it is illogical, implausible, or without support in the record." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc); *United States v. Graf*, 610 F.3d 1148, 1157 (9th Cir. 2010). Our review of the record reveals that the district court's comments played no role in its determination of an appropriate sentence. The court expressly recognized that it did not have the transcripts from the earlier hearings before it and the court stated that, in its view, Burgos-Ortega's reasons for an illegal re-entry were irrelevant. Viewing the record as a whole, the district court did not rest its sentence on any clearly erroneous fact.

---

Ortega's Utah convictions were sufficient bases for the 12-level offense level increase, nor whether the modified categorical approach would be applicable in this case had we determined that RCW § 69.50.401 was categorically overbroad.

IV

Burgos-Ortega's final argument is that his sentence was substantively unreasonable because the district court failed to account for the staleness of his 1992 Washington heroin conviction, focused excessively on deterrence while disregarding the nature and circumstances of his current offense, and overlooked the other § 3553(a) factors.

In assessing the substantive reasonableness of a sentence, courts consider the totality of the circumstances, including the degree of variance from the Guidelines. *United States v. Gall*, 552 U.S. 38, 49–51 (2007). "The weight to be given the various factors in a particular case is for the discretion of the district court." *United States v. Gutierrez-Sanchez*, 587 F.3d 904, 908 (9th Cir. 2009) (citing *Carty*, 520 F.3d at 993). One of the permissible § 3553(a) factors is "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B).

Here, while the Guidelines-range sentence was 18 to 24 months, Burgos-Ortega had already received 70-month and 46-month sentences for his prior two illegal re-entry convictions. Burgos-Ortega also had an extensive prior criminal history aside from his illegal re-entries, including seven drug and theft-related convictions from 1992 to 1996. In addition, he had re-entered the country a mere four months after finishing his 3-year term of supervised release for his prior illegal re-entry conviction in 2012.[10]

---

[10] Contrary to Burgos-Ortega's assertion, the district court did not apply a 16-level enhancement when it imposed a 46-month sentence, nor did it "disregard" the 2011 Guidelines Amendment reducing the offense level

The district court discussed the totality of the circumstances, including the staleness of Burgos-Ortega's prior convictions, Burgos-Ortega's participation in the Southern District of California's "fast track" program, the lack of any recent drug offenses, Burgos-Ortega's acceptance of responsibility, and his excuse for returning, specifically that he wanted to reunite with his family. Nevertheless, the district court reasonably concluded, citing Burgos-Ortega's extensive criminal history and prior illegal re-entry convictions, that the need for deterrence under § 3553(a)(2) outweighed any mitigating factors and required a sentence at least equal to his last illegal re-entry sentence.

Burgos-Ortega relies on *United States v. Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009), in support of his contention that his sentence was substantively unreasonable, but that case is distinguishable. In *Amezcua-Vasquez*, a defendant was convicted for illegal re-entry and sentenced to a within-Guidelines sentence of 52 months based on a 16-level enhancement for a prior aggravated felony, specifically his 25-year-old convictions for assault with great bodily injury and attempted voluntary manslaughter. We held that although the Guidelines range was calculated correctly, the defendant's sentence was substantively unreasonable because of "the staleness of [the defendant's] prior conviction and his subsequent history showing no convictions for harming others or committing other crimes listed in Section 2L1.2 [of the Guidelines]." *Id.* at 1055. However, we specifically stated that our holding in *Amezcua-Vasquez* had a "limited scope," noting that we had made "no pronouncement" as to the reasonableness of sentences based on more recent

---

increase from 16 to 12. Rather, the district court clearly stated that it was varying upward from the Guidelines range.

convictions or the need for deterrence. *Id.* at 1058; *see also United States v. Valencia-Barragan*, 608 F.3d 1103, 1108–09 (9th Cir. 2010) (discussing *Amezcua-Vasquez*'s limited scope).

Here, Burgos-Ortega has a much longer criminal record, his prior convictions are more recent, and he has been convicted for illegal re-entry three times. *See United States v. Segura-Del Real*, 83 F.3d 275, 277 (9th Cir. 1996) (repetition of the same or similar offenses may warrant an upward departure). Further, the staleness of Burgos-Ortega's triggering conviction was taken into account under the post-*Amezcua-Vasquez* Guidelines amendment reducing the increase for a prior felony not scored from 16 to 12. On this record, the district court did not commit "a clear error of judgment in the conclusion it reached upon weighing the relevant factors." *See Amezcua-Vasquez*, 567 F.3d at 1055. We therefore reject Burgos-Ortega's claim that his sentence was substantively unreasonable.

V

The district court did not err in sentencing Burgos-Ortega. It properly considered Burgos-Ortega's 1992 Washington state conviction for delivery of heroin. At most, he has shown only a theoretical possibility that a defendant could be convicted for administering rather than distributing a drug under RCW § 69.50.401. The district court did not abuse its discretion by relying on clearly erroneous facts. Finally, Burgos-Ortega's 46-month sentence was not substantively unreasonable in light of his prior 70-month and 46-month sentences for illegal re-entry. The district court reasonably determined that a 46-month sentence was sufficient but not greater than necessary. Because our standard of review

requires that we give district courts great latitude both in choosing a sentence and in articulating reasons for the sentence, Burgos-Ortega's sentence is **AFFIRMED**.