**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50112 |
| *Plaintiff-Appellee*, | D.C. No. |
| v. | 3:22-cr-00224- |
| | LAB-1 |
| URBANO TORRES-GILES, | |
| *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted July 13, 2023
Pasadena, California

Filed August 31, 2023

Before: Gabriel P. Sanchez and Salvador Mendoza, Jr.,
Circuit Judges, and Brian A. Jackson,[*] District Judge.

Opinion by Judge Sanchez;
Partial Concurrence and Partial Dissent by
Judge Mendoza, Jr.

---

[*] The Honorable Brian A. Jackson, United States District Judge for the
Middle District of Louisiana, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a sentence in a case in which Urbano Torres-Giles pleaded guilty to attempted reentry following removal and entered a Federal Rule of Criminal Procedure 11(c)(1)(B) plea agreement, known as a "Type B" agreement.

Torres-Giles argued that the district court abused its discretion by "rejecting" his Type B plea agreement in its entirety after imposing sentence for the reentry offense. The panel explained that unlike plea agreements under Federal Rules of Criminal Procedure 11(c)(1)(A) and (c)(1)(C), no corresponding opportunity-to-withdraw language governs Type B plea agreements; the defendant has no right to withdraw a Type B plea if the court does not follow the government's recommendation or the defendant's request, and a Type B agreement is not binding upon the court. The panel held that so long as the defendant is apprised of the consequences of entering into a Type B plea agreement and accedes to them voluntarily, he has no right to withdraw from the agreement on the ground that the court does not accept the sentencing recommendation or request. Accordingly, the district court's use of the word "reject" in the context of a Type B plea agreement can have no legal effect. The panel wrote that the record establishes that Torres-Giles was aware of the consequences of entering into a Type B plea agreement, and concluded that the district

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

court therefore did not abuse its discretion under the circumstances.

The same district court judge who sentenced Torres-Giles in this case had presided over his prior sentencing hearing for illegal reentry. Torres-Giles argued that the district court committed procedural error when it used Torres-Giles's alleged promise at his prior sentencing hearing not to return to the United States as a sentencing factor for the attempted reentry offense without any proof such a promise had been made. Reviewing for plain error, the panel held that the district court's factual finding that Torres-Giles had assured the court at the prior sentencing hearing that he would not return to the United States is supported by the record. In addition, the record establishes that the broken promise played virtually no role in the district court's sentence for the attempted reentry offense. And even if the district court procedurally erred by relying on the promise, Torres-Giles did not demonstrate that his substantial rights were affected.

Judge Mendoza concurred in part and dissented in part. He dissented from the part of the majority opinion concerning the district court's finding of a broken promise.

Applying *United States v. Burgos-Ortega*, 777 F.3d 1047 (9th Cir. 2015), which he reads as suggesting correctly that a district court's speculation about statements potentially made during a prior hearing is a "clearly erroneous fact" that cannot be used as a sentencing factor, and reviewing for plain error, he would reverse.

## COUNSEL

Adam F. Doyle (argued), Law Office of Adam F. Doyle, San Diego, California, for Defendant-Appellant.

David E. Fawcett (argued), Assistant United States Attorney; Daniel E. Zipp, Assistant United States Attorney, Appellate Section Chief, Criminal Division; Rand S. Grossman, United States Attorney; United States Attorney's Office, San Diego, California; Mikaela Weber, Solomon Ward Seidenwurm & Smith LLP, San Diego, California; for Plaintiff-Appellee.

## OPINION

SANCHEZ, Circuit Judge:

Urbano Torres-Giles appeals his sentence of twenty-seven months' imprisonment followed by three years' supervised release for attempted reentry following removal in violation of 8 U.S.C. § 1326. At the time of his attempted reentry, Torres-Giles had been deported from the United States six times, most recently about a month before his arrest. The same district court judge who sentenced Torres-Giles in this case had presided over his prior sentencing hearing for illegal reentry.

On appeal, Torres-Giles raises two challenges to the court's sentence. First, he contends that the district court abused its discretion by rejecting his Federal Rule of Criminal Procedure 11(c)(1)(B) plea agreement in its entirety after imposing sentence for the reentry offense. Second, Torres-Giles argues that the district court erred by

considering an alleged assurance he made at his prior sentencing hearing that he would not return to the United States. We affirm.

## I.

Torres-Giles is a native and citizen of Mexico with a substantial criminal immigration history. He was convicted of illegal reentry and deported six times. In 2009, he was convicted of illegal reentry and deported in April 2010 after serving a six-month sentence. He was arrested again two weeks later, convicted of illegal reentry, and served a 90-day sentence. In 2018, Torres-Giles was detained by immigration officials following his arrest for a domestic violence incident.[1] He was convicted of illegal reentry and sentenced in 2019 to a six-month term.[2] He was arrested again in 2019 for illegal reentry and sentenced to a twenty-one-month term in the Southern District of California. Torres-Giles was deported in December 2021. He remained in Tijuana, Mexico for approximately one month before he attempted to reenter the United States and was arrested again.

When Torres-Giles was arrested on January 10, 2022, for the present offense, he was on supervised release from the two prior criminal immigration cases. The government filed a one-count information charging Torres-Giles with attempted reentry of a removed alien in violation of § 1326, along with notice relating it to the two prior cases with

---

[1] Torres-Giles was also convicted in the United States of felony aggravated assault in 2005, misdemeanor domestic violence in 2009, and driving under the influence in 2004 and 2017.

[2] This case originally proceeded in the Central District of California but was transferred to the Southern District of California.

pending terms of supervised release. The case was transferred to the same district court judge who had presided over Torres-Giles's prior cases.

Torres-Giles entered a Rule 11(c)(1)(B) plea agreement, known as a "Type B" agreement, setting forth a global resolution for the three cases. The plea agreement proposed fast-track departure for the most recent § 1326 reentry offense. When Torres-Giles appeared for his entry of guilty plea, the magistrate judge completed a Rule 11 colloquy advising Torres-Giles that his plea agreement was not binding on the district court and that he could be sentenced to a higher or lower sentence than the recommendation in the plea agreement. Torres-Giles stated that he understood.

At the sentencing hearing, the district court began with Torres-Giles's most recent offense of attempted reentry. The court confirmed with defense counsel that Torres-Giles had appeared before him at the last sentencing hearing and then asked whether counsel had reviewed the sentencing transcript from the previous hearing. The following exchange transpired:

> DEFENSE COUNSEL: I did not take a look at the transcript, but I certainly remember most of it.
>
> THE COURT: What did he tell me about whether he would remain out of the United States? Because he had been convicted multiple times of coming into the United States illegally before he was sentenced last time. What do you recall him telling me about whether he would remain out?

DEFENSE COUNSEL: I believe the Court inquired as to that, and Mr. Torres said that -- I don't know his exact words, but he would certainly do his best to remain out of the country.

THE COURT: Right. And his mother's condition, as you point out, was kind of front and center even then, right?

DEFENSE COUNSEL: That is correct, Your Honor.

THE COURT: So that was known, that was discussed, and I sought from him an assurance that he would stay out, and he gave me that assurance?

DEFENSE COUNSEL: That's my recollection. I don't have the transcript in front of me.

The court observed that Torres-Giles had been convicted of several violent felonies, including an assault with a deadly weapon, another violent offense that involved kicking someone in the head, and a domestic violence conviction, and had a significant criminal immigration history, including six deportations.

After Torres-Giles allocuted, promising that he would "never set foot again in this country," the court asked him whether he remembered making a prior promise not to return: "[D]o you remember telling me words to that effect last time, that you would not come back again? Do you remember saying that to me when you were here before in 2019?" Torres-Giles stated he did not.

After hearing argument from counsel, the court rejected the parties' joint recommendation for fast-track departure. The court discussed the sentencing factors under 18 U.S.C. § 3553(a), including the nature of the offense, Torres-Giles's history and characteristics, and the need for deterrence and to promote respect for the law. The court sentenced Torres-Giles to the upper-end of the guideline range, twenty-seven months.

The parties informed the court that Torres-Giles's plea agreement included a right of appeal should the court reject fast-track departure. The court stated that if the plea agreement depended on the court going along with a fast-track concession it believed to be unjustified, it rejected the plea agreement. Defense counsel asked for clarification: "are you rejecting the plea agreement in its entirety or just declining to impose the fast-track departure?" The court stated: "I'm not going to put my imprimatur on an agreement like that. . . . I reject the plea agreement."

The court then turned to the two supervised release cases and found that Torres-Giles violated the conditions that he not return to the United States or violate the laws of the United States. The court noted that in this context, it was permitted to consider the nature of the breach of the trust which it found was explicit and clear. The court stated that when Torres-Giles was sentenced in May 2020, the court said, "don't come back anymore," and "you then promised me, according to your lawyer, that you wouldn't come back again, and yet what? A month and a half of getting out of jail for that, you came right back." Torres-Giles repeated that he appeared on video but was not able to speak to the court at that hearing. The court stated that was not true because his lawyer remembered otherwise, and the court would not have

gone forward with sentencing if Torres-Giles had not been able to say anything.

In light of Torres-Giles's attempt to reenter so soon after his most recent deportation as well as breaking his promise that he would not return, the court imposed a consecutive twenty-four-month term for his more recent supervised release case, and a sentence of time-served in the older supervised release case. Torres-Giles was thus sentenced to an aggregate term of fifty-one months. This timely appeal followed.

**II**.

We review a district court's sentencing decision for abuse of discretion. *United States v. Brown*, 42 F.4th 1142, 1145 (9th Cir. 2022); *see also United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). Plain error review, however, applies to unpreserved claims of procedural error. *United States v. Ferguson*, 8 F.4th 1143, 1145 (9th Cir. 2021); *see also United States v. Quintero-Junco*, 754 F.3d 746, 749 (9th Cir. 2014). "To establish plain error, a defendant must show '(1) error, (2) that is plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceedings.'" *Ferguson*, 8 F.4th at 1145–46 (quoting *United States v. Borowy*, 595 F.3d 1045, 1049 (9th Cir. 2010)).

Torres-Giles first contends the district court abused its discretion by "rejecting" the plea agreement in its entirety after imposing sentence for the reentry offense. We disagree because the court's "rejection" of a Type B plea agreement does not transform it into a binding agreement or otherwise allow the defendant to withdraw from the plea.

We recently held that a district court's purported "rejection" of a Type B plea agreement at sentencing had no legal effect. *See United States v. Montoya*, 48 F.4th 1028, 1033–34 (9th Cir. 2022), *vacated for reh'g en banc on other grounds*, 54 F.4th 1168 (9th Cir. 2022). A close review of the text of Rule 11 supports this conclusion. Rule 11(c)(1)(A) and (c)(1)(C) require the court to "give the defendant an opportunity to withdraw the plea" if the court rejects a plea agreement entered under these provisions. Fed. R. Crim. P. 11(c)(5)(B). But no corresponding opportunity-to-withdraw language governs Type B plea agreements. *See id.* Rather, the text of Rule 11(c)(1)(B) provides that if the defendant pleads guilty, the government will "recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply," though "such a recommendation or request does not bind the court." Fed. R. Crim. P. 11(c)(1)(B). "[T]he defendant has no right to withdraw the [Type B] plea if the court does not follow the recommendation or request." Fed. R. Crim. P. 11(c)(3)(B); *see also* Fed. R. Crim. P. 11 advisory committee's note to 1979 amendment (providing that a Type B agreement is "clearly of a different order" than the Type A or C agreement as a Type B plea is an "agreement to recommend" that "is discharged when the prosecutor performs as he agreed to do" and is "not binding upon the court").

"Traditional canons of statutory construction suggest that this omission was meaningful." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017). We presume that the Rules drafters acted "intentionally and purposely" by omitting the right to withdraw only from Type

B agreements. *Russello v. United States*, 464 U.S. 16, 23 (1983). So long as the defendant is fairly apprised of the consequences of entering into a Type B plea agreement and accedes to them voluntarily, he has no right to withdraw from the agreement on the ground that the court does not accept the sentencing recommendation or request. Fed. R. Crim. P. 11(c)(3)(B). Accordingly, the district court's use of the word "reject" in the context of a Type B plea agreement can have no legal effect.

The record establishes that Torres-Giles was aware of the consequences of entering into a Type B plea agreement. In his Rule 11 colloquy before the magistrate judge, Torres-Giles acknowledged that his Type B agreement was non-binding and that the district court judge could sentence him to a higher or lower sentence than the one in the plea agreement. The plea agreement that he signed also stated the court was free to reject the sentencing recommendation. That the district court purportedly "rejected" the plea agreement cannot transform his non-binding Type B plea agreement into a binding Type A or Type C plea agreement. We conclude that the district court did not abuse its discretion under the circumstances.

### III.

Torres-Giles next argues the district court committed procedural error when it used his alleged promise not to return to the United States as a sentencing factor for the § 1326 reentry offense without any proof such a promise had been made. Because Torres-Giles did not raise this procedural objection in the district court, we review it for

plain error. *Ferguson*, 8 F.4th at 1145.**³** We conclude that Torres-Giles has not established any error by the district court, much less error that affected his substantial rights.

A district court procedurally errs at sentencing if it imposes a sentence based on "clearly erroneous facts." *United States v. Burgos-Ortega*, 777 F.3d 1047, 1056 (9th Cir. 2015) (quoting *Carty*, 520 F.3d at 993)). A finding is clearly erroneous if it is illogical, implausible, or without support in the record." *Id.* (quoting *United States v. Graf*, 610 F.3d 1148, 1157 (9th Cir. 2010)). The district court's finding that Torres-Giles had assured the court at his May 2020 sentencing hearing that he would not return to the United States is supported by the record.

Defense counsel confirmed his client's promise not to return to the United States. Specifically, counsel confirmed that while he had not read the transcript from the prior sentencing hearing, he "certainly remember[ed] most of it" and recalled that "Mr. Torres said that—I don't know his exact words, but he would certainly do his best to remain out of the country." Defense counsel's recollection aligned with the district court's own recollection of what occurred at the hearing. The district court judge also explained his practice of allowing defendants to speak at sentencing and rejected Torres-Giles's assertion that he was not given the opportunity to speak by video. Although Torres-Giles contends he never made such a promise, he has not presented a transcript of the prior hearing or otherwise directed this court to any portion of the record that might support his

---

³ Even if we were to review the claim under an abuse of discretion standard, as Torres-Giles suggests, we would arrive at the same conclusion and find no abuse of discretion.

claim.  Torres-Giles has not demonstrated clear error in the district court's finding of a broken promise.

Our dissenting colleague characterizes the district court and defense counsel's recollection of the May 2020 hearing as "flawed" and "equivocal," but the record belies these descriptions.  Even without a transcript, defense counsel stated he "certainly remember[ed] most of it," including that the defendant had assured the court he would remain outside the United States, and the district court clearly recalled the same exchange along with other details from the prior hearing.  Defendant's bare assertion that he was not allowed to speak was rejected by the court given its practice of allowing each defendant to speak at sentencing.  This is a quintessential factual dispute.  Our review for clear error does not permit us to pick and choose who we find more believable, and the record plainly supports the district court's finding that Torres-Giles made such a promise.[4]

The record also establishes that the broken promise played virtually no role in the district court's sentence for the § 1326 offense.  The court discussed at length Torres-Giles's

---

[4] The dissent selectively quotes one instance where the district court judge stated, "I don't remember exactly," while omitting the rest of the sentence: "I don't remember exactly, but I would not have gone forward if you could not have spoken to me over the video conference because you have an absolute right to speak at sentencing."

A fair reading of the transcript does not indicate that the judge was equivocal in recalling the prior hearing.  For example, the court stated at a later point: "All right. Mr. Torres, you have a right again to speak. The issue this time is when I sentenced you in May of 2020, two years ago, I said, 'Look, don't come back anymore. Go in peace.' … You then promised me, according to your lawyer, that you wouldn't come back again, and, yet, what? A month and a half of getting out of jail for that, you came right back."

recidivism, multiple felony convictions, prior violence, and significant criminal immigration history, emphasizing the need for deterrence, just punishment, and promoting respect for the law. After the court pronounced sentence of twenty-seven months' custody, the court referenced the broken promise again, doing so to warn Torres-Giles of the consequences he would face if he returned to the United States.[5]

Even if the district court procedurally erred by relying on the alleged promise, Torres-Giles has not demonstrated that his substantial rights were affected. He does not challenge the district court's reliance on other § 3553(a) sentencing factors to impose sentence on the § 1326 conviction. At most, the court's discussion of a broken promise was nested within a broader balancing of several sentencing factors that are amply supported by the record, and Torres-Giles has not shown that his sentence would have differed had the court declined to consider his prior statement.

**AFFIRMED.**

---

[5] An extended back-and-forth about the broken promise took place during the portion of sentencing that addressed the supervised release cases. Torres-Giles does not challenge the district court's authority to consider a breach of trust in determining the appropriate sentence for violating a term of supervised release.

MENDOZA, Circuit Judge, concurring in part and dissenting in part:

The district court imposed a criminal sentence based on a fact that the defendant disputed, that the court could not recall, and that was not supported by any evidence in the record. I thus dissent from Part III of the Court's opinion.[1] Imposing a prison sentence based on guesswork is unacceptable, especially when the defendant is in the courtroom saying that the judge has guessed wrong.

## I.

This fact pattern is not new. In *United States v. Burgos-Ortega*, 777 F.3d 1047 (9th Cir. 2015), the defendant pled guilty to attempted reentry in violation of 8 U.S.C. § 1326. The parties requested a 24-month sentence based, in part, on Mr. Burgos-Ortega's representation that he had no reason to return to the United States, having reestablished contact with his children who planned to continue their relationship with him and visit him in Mexico. *Id.* at 1050. However, the district court imposed an above-Guidelines sentence, stating:

> Now I have reviewed this file pretty carefully because I knew I was going to vary up. And I've heard the reasons for coming back into the United States. I'd be willing to bet you dollars to donuts that if I went and I got a transcript of the proceedings of his previous 1326's, he probably had a good excuse for coming back into the United States. Now I don't have those transcripts. But, you know, I do enough of these every Monday, I

---

[1] I join Parts I–II.

> probably do more sentencings than many, many districts combined. And I hear it all the time. There is always, you know, reason to come back. They want to be with their family or what have you. And the story never changes in the sense that they come back.

*Id.* Defense counsel responded that because Mr. Burgos-Ortega had satisfied his reason for returning to the United States—to reunite with his children—he was unlikely to reoffend. *Id.* at 1051. The district court dismissed this argument as "just not very credible." *Id.*

On appeal, Mr. Burgos-Ortega argued that "the district court improperly speculated that he had offered good reasons for his prior two illegal re-entries when it rejected Burgos-Ortega's contention that he had no reason for returning to the United States in the future." *Id.* at 1056. We rejected that argument, but not because we condone criminal sentences based on speculation. Rather, we held "the district court's comments played no role in its determination of an appropriate sentence. The court expressly recognized that it did not have the transcripts from the earlier hearings before it and the court stated that, in its view, Burgos-Ortega's reasons for an illegal re-entry were irrelevant." *Id.* at 1056.

I read *Burgos-Ortega* as suggesting, correctly, that a district court's speculation about statements potentially made during a prior hearing is a "clearly erroneous fact" that cannot be used as a sentencing factor. *Id.* at 1056. Applying that rule here, and reviewing for plain error, I would reverse.

## II.

The court's finding of a broken promise is clearly erroneous because it is "without support in inferences that

may be drawn from *the facts* in the record." *United States v. Valle*, 940 F.3d 473, 478 (9th Cir. 2019) (emphasis added) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). Mr. Torres-Giles expressly denied making the promise or entering "a trust relationship," as the judge described it, to which the judge conceded "I don't remember exactly." Yet he doubted Mr. Torres-Giles, saying:

> I don't think it's true. I think you're misrecollecting when you say you didn't get an opportunity to speak or you didn't say anything. Your lawyer remembers otherwise, and my practice would have forbidden going forward if you couldn't have communicated with me via video.

Here, as in *Burgos-Ortega*, the district judge may have had insights and intuition about Mr. Torres-Giles's prior statements, but he did not have the transcripts from the earlier hearings, nor the confirmed facts. There also is nothing in the Criminal History Report confirming this flawed and disputed memory. "A merely speculative logic cannot displace the need for evidence on such an issue, which cannot be decided by assumption or inference not based on fact." *United States v. Jordan*, 291 F.3d 1091, 1099 (9th Cir. 2002).

The majority is wrong to rest on defense counsel's equivocal assent to the district judge's questioning about Mr. Torres-Giles's alleged promise. My colleagues say that defense counsel "certainly remember[ed] most" of the prior hearing. But that does not mean, and the record does not show, that he remembered Mr. Torres-Giles making a

promise and entering "a trust relationship" with the court.[2] In fact, defense counsel told the court "I don't know his exact words." Then, when asked whether his client made an assurance, he said: "That's my recollection. *I don't have the transcript in front of me*." In other words, "I'm not sure." Two flawed memories cannot equal a confirmed fact.

Moreover, the attorney-client relationship "is a quintessential principal-agent relationship" where "the client retains ultimate dominion and control over the underlying claim." *C.I.R. v. Banks*, 543 U.S. 426, 436 (2005). Mr. Torres-Giles exercised that control by correcting his lawyer. Unlike trial management decisions, which are "the lawyer's province," the decision to admit or deny an aggravating sentencing factor is of the kind "reserved for the client." *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018) (noting the client ultimately decides things like whether to "plead guilty," "testify in one's own behalf," and "assert innocence"). The sentencing court should not have relied on the attorney's uncertain memory given Mr. Torres-Giles's statement that his attorney was wrong; that "I didn't say those things."

The majority also faults Mr. Torres-Giles for not presenting a transcript from the prior hearing or other evidence to support his claim. But that is not his burden. A sentencing court may not assume an aggravating factor and require the defendant to disprove it. *See United States v. Flores*, 725 F.3d 1028, 1041 (9th Cir. 2013) (noting the

---

[2] The district judge said he considered the attempted reentry a "breach of trust" materially different than an ordinary violation of supervised release, which he did not view as "a trust relationship." *See infra* Part III.

government bears the burden of establishing the factual underpinnings for imposing a sentencing enhancement).

The majority says in closing that we may not "pick and choose who we find more believable." Agreed, but neither may the district court when its own memory of events is foggy. A sentencing court cannot enhance a criminal sentence through a credibility contest of unsworn statements; by crediting its own speculation over the defendant's version of the facts. A judge's insights and intuition are not enough. *See Jordan*, 291 F.3d at 1098. Rather, the factual dispute must be resolved on "the facts in the record." *Valle*, 940 F.3d at 478 (quoting *Hinkson*, 585 F.3d at 1262). This record shows only that between the judge, the lawyer, and the defendant, just one person was certain their memory was correct: Mr. Torres-Giles.

## III.

The district court's error affected Mr. Torres-Giles's substantial rights because the record shows "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)). The district judge explained that he viewed Mr. Torres-Giles's circumstances as "different" and "aggravated" because of the broken promise. He said, "I did think that we had a meeting of the minds when he promised me that he wouldn't come back." He also considered the attempted reentry a "breach of trust" materially different than an ordinary violation of supervised release, which he did not view as "a trust relationship." Before imposing a

sentence above the parties' joint recommendation, the judge said:

> Mr. Torres, I'm not going to elicit a promise from you this time because your word has proved not to be really good. You promised me last time you wouldn't come back and, yet, you did. But I am going to tell you that if you do come back again, I'll give you a promise, you're going to face a sanction. Whatever the government does, you're going to face a sanction on this case if you come back in the next three years.

On this record, it is easy to conclude that there is a "reasonable probability" the court would not have sentenced Mr. Torres-Giles so harshly—above even the government's recommendation—had it not relied on this erroneous fact. *Rosales-Mireles*, 138 S. Ct. at 1905.

We must correct this error. The majority says that "the broken promise played virtually no role in the district court's sentence for the § 1326 offense." But that, too, is speculation. We have no way of knowing the extent to which the erroneous finding affected the sentence. Regardless, any role is too great. I can think of few things more damaging to "the fairness, integrity, and public reputation of judicial proceedings" than imposing a prison sentence based on a disputed factual finding that has no support in the record. *Id.* at 1911.

I respectfully dissent.