**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert Richardson KIMBALL, Defendant–Appellant.**

**No. 91–10207.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1992.

Opinion Filed April 27, 1992.

Opinion Withdrawn Sept. 17, 1992.

Decided Sept. 17, 1992.

---

David Nickerson, Mazer & Nickerson, San Francisco, Cal., for defendant-appellant.

Brian L. Sullivan, Asst. U.S. Atty., Reno, Nev., for plaintiff-appellee.

Before REINHARDT, NOONAN, and THOMPSON, Circuit Judges.

ORDER AND OPINION

ORDER

The panel has voted unanimously to grant the petition for rehearing. The petition for rehearing is GRANTED and the opinion filed April 27, 1992 is WITHDRAWN.

OPINION

NOONAN, Circuit Judge:

Once more the sentencing procedure, not the crime, is the issue on appeal. On January 13, 1990 Robert Richardson Kimball pleaded guilty to the crime of aiding and abetting international money laundering in violation of 18 U.S.C. § 1956(a)(2)(B)(i) and § 2. The district court in sentencing took into account that he had also engaged in marijuana smuggling. Kimball objects to the process the district court employed. We affirm the district court.

PROCEEDINGS

In November 1987 Kimball was charged with conspiracy to defraud the United States and with a variety of other crimes relating to money laundering and reporting financial requirements. In September 1988 a superseding indictment charged Kimball and the others plus two more defendants with conspiracy to aid and abet the distribution of marijuana.

Plea negotiations were conducted with Kimball and five of the defendants, resulting in the Joint Plea Memorandum of January 13, 1990, made pursuant to Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure and as such intended to be binding on the court. The relevant terms of this agreement were that the defendants would forfeit certain property including $7 million in cash and an additional "$5,632 in cash that was seized from defendant Kimball." The acceptance of these assets by the government was "based on defendants' representation that they represent all defendants' forfeitable assets, assets obtained through drug trafficking." In addition, the defendants agreed to the forfeiture of approximately $7,618,570 obtained by "Robert Richardson Kimball, Brian Peter Daniels, David Lyle Boese, Stephen Illenberger, Thomas E. Tuttle". The defendants agreed to plead guilty to one count of money laundering in violation of 18 U.S.C. § 1956 and the government agreed they would be sentenced under pre-guideline procedures with the binding cap of 13 years for Kimball.

A further section of the Joint Plea Memorandum stated "Facts to Support a Plea of Guilty." Relevant facts therein stated follow:

In approximately late 1986, Brian Peter Daniels, Robert Richardson Kimball, David Lee Boese, Thomas E. Tuttle and others began formulating plans to import loads of southeast Asian marijuana in to the United States. Brian Peter Daniels, who resided in Thailand, had established contacts to obtain Thai marijuana from sources who cultivated and stockpiled the marijuana.

In late 1986, and continuing through July 1987, Boese, utilizing the name Barry John Johnson, and utilizing a British passport, travelled on numerous occasions to Hong Kong and Bangkok and other cities throughout southeast Asia in order to arrange for the shipments. Robert Richardson Kimball, utilizing the name Robert Glyn Bland, and also utilizing a British passport, was also travelling throughout southeast Asia during the same time period. During this time Boese and Kimball were in communication concerning the upcoming loads.

. . . .

Some time around the middle of September, 1987, the 42–ton load of marijuana was offloaded on the West Coast of the United States. Approximately 19 tons of this marijuana was transported and distributed on behalf of the Daniels, Kimball, Boese Organization.

. . . .

On January 26, 1988, Brian Peter Daniels met with Phillip Christensen in Bangkok, Thailand. During this meeting, Daniels related that he had sent four

successful boatloads of marijuana to the United States in 1987. The last boatload was split with William and Chris Schaffer. Daniels related that the funds derived from this load were seized in Reno, Nevada and two of his (Daniels') men, Robert Kimball and Stephen Illenberger, were arrested. Daniels stated that he was paying money to assist Kimball and Illenberger with their legal problems. Daniels stated that he had flown to Austria to open up a bank account in order to receive a portion of the $7.6 million seized in Reno. Daniels also related that Kimball and his associates had a total of approximately $45,000,000 as a result of the above load.

The same day that the Joint Plea Memorandum was agreed to, the government filed a superseding information charging Kimball with aiding and abetting an international money laundering offense, and Kimball pleaded guilty to the charge.

On January 25, 1991 a Supplemental Plea Agreement was entered into by the government and the defendants including Kimball. According to this agreement, the defendants were no longer required to forfeit $7 million in cash. However, the cap on Kimball's sentence was increased from 13 years to 18 years and he agreed "to forfeit to the government before sentencing at least $700,000 in cash that was derived from drug trafficking." At the time the district court accepted Kimball's guilty plea, Kimball effectively repudiated the facts as presented in the Joint Plea Memorandum. In establishing a factual basis for his plea, the court did not require Kimball to admit to any facts supporting the government's claim that he had smuggled marijuana. Kimball admitted only his role as a money launderer.

An amended presentence report relating to Kimball was filed by a probation officer March 1, 1991. It gave both a "prosecution version" and a "defendant's version." According to the defendant's version, Kimball admitted only participation in attempting to transfer money that he believed to come from the sale of marijuana. In contrast, the "prosecution version" essentially tracked the Joint Plea Memorandum. Thus it began with the paragraphs quoted earlier in this opinion that stated that Kimball had begun in late 1986 to conspire with the other defendants to import loads of marijuana into the United States.

On March 19, 1991 Kimball filed objections to the presentence report. In particular, he objected to the statements about his participation in the smuggling of marijuana. He contended that his sole activity was to "receive money from sources that have been involved in an importation and distribution of marijuana." The statement that beginning in 1986 he and the others had begun formulating plans to import Asian marijuana into the United States was characterized as "totally unfounded by any evidence or facts." Comparable objections were made to other parts of the presentence report.

Kimball's sentencing hearing began on March 25, 1991. In light of the objections, the court said it would set an evidentiary hearing. On April 8, 1991 the government filed a written response to the objections. It referred to reports of government agents to support its contentions. At the evidentiary hearing that followed, the government reminded the court that it had heard earlier evidence in the case in the course of a hearing on the disqualification of Kimball's counsel because of his apparent involvement in the marijuana smuggling. The government read from its statement of facts in its brief before the Ninth Circuit in *United States v. Kimball*, 884 F.2d 1274 (9th Cir.1989), a case which upheld the suppression of certain statements made by Kimball.

The district court declared, "I have heard enough about this case that I pretty much know what it is all about anyway.... You don't live with one for two years or two and a half years like I have, and not have a good understanding of what it is all about." The court further stated to Kimball:

I, of course, heard the testimony of D.E.A. Agents at prior hearings, their conversations that Daniels satisfied me that you were not just involved in the money laundering end of it, that you also

had fairly intimate knowledge of the drug smuggling activities and had some participation in connection with those activities as well and I've already made those findings.

The district court then sentenced Kimball to 18 years, the maximum possible under the plea agreement. Kimball appeals.

### ANALYSIS

■ In this pre-guideline case, the defendant cannot appeal the sentence imposed. His only ground for appeal is the court's alleged abuse of discretion in resolving the controverted matters in the presentence report. We are free to affirm on any basis shown in the record.

■ In making either a due process challenge or a Fed.R.Crim.P. 32(c)(3)(D) challenge to a presentence report, a defendant bears the burden of first showing that "the disputed information is ... false or unreliable". *United States v. Columbus*, 881 F.2d 785, 787 (9th Cir.1989) (due process challenge); *United States v. Roberson*, 896 F.2d 388, 391 (9th Cir.1990) (Rule 32(c)(3)(D) challenge). Material information is "unreliable" if it "lacks 'some minimal indicium of reliability beyond mere allegation.'" *United States v. Ibarra*, 737 F.2d 825, 827 (9th Cir.1984) (quoting *United States v. Baylin*, 696 F.2d 1030, 1040 (3rd Cir.1982)).

■ Kimball argues that the factual basis for the government's assertion that he was a marijuana smuggler is "almost nil". The evidence that Kimball was engaged in marijuana smuggling includes the sworn testimony of DEA Agent William Harper; the sworn testimony of two undercover informants; and a note, written by Daniels, purporting to outline the ownership interests in a 42–ton load of marijuana that had been smuggled into the United States. All of this evidence, and quite a bit more that merely implies Kimball was engaged in smuggling marijuana, was presented by the government at evidentiary hearings before Kimball arranged his plea agreement.

According to the testimony of Harper, who met with Daniels a number of times undercover, Daniels told him that Kimball and David Boese were "in charge of the distribution of the load of marijuana that had been sent over to the United States and in a subsequent collection of the money". Daniels then showed the agents "a handwritten sheet breakdown of the 42 tons that [Daniels] had sent over and who owned what portion of that load of marijuana". Harper testified that Daniels told him the ownership interests in the marijuana "was about $19 million for [Daniels]. The breakdown for Mr. Kimball and Mr. Boese I don't remember". Harper's testimony establishes that Kimball was a part owner in the marijuana smuggled into the country. Daniels' note is physical evidence tending to corroborate Harper's testimony.

Harper also testified that in his first meeting with Daniels in Bangkok, Daniels told him that two people with whom he owned shares of a shipment of marijuana had gotten caught in laundering $7½ million, which was the amount initially collected for the shipment; that they were now in jail in Reno; and that Daniels possessed copies of the indictments and complaints. Harper could not remember if Daniels had identified the two people by name or not. Within a month of Harper's conversation with him, however, Daniels separately told two undercover informants that Kimball was his "associate" who had been arrested in Reno.

■ In seeking to rebut this evidence of his marijuana smuggling, Kimball simply alleges that the testimony is false. These bare allegations do not establish the unreliability of the testimony. *United States v. Rachels*, 820 F.2d 325, 328 (9th Cir.1987). Kimball offered no evidence to contradict the evidence put on by the government. One cannot allege that "there are mistakes and then stand mute without showing why they are mistakes". *Roberson*, 896 F.2d at 391. Having failed to show that the disputed fact is false or unreliable, Kimball's due process and Rule 32(c)(3)(D) challenges to the substance of his presentence report fail.

Kimball also argues that his due process rights were violated because he had no "prior notice" that the court would invoke, at his sentencing, the evidence presented in its previous evidentiary hearings. This is a curious argument. The mass of evidence accumulated before a conviction is handed down or before a plea is arranged is typically the very stuff used to resolve a factual dispute in a presentence report. There is no general right to an evidentiary hearing at sentencing, *United States v. Petitto*, 767 F.2d 607, 611 (9th Cir.1985), and where a defendant "fail[s] to present any facts in rebuttal" to the government's evidence, there need be no new evidentiary hearing. *United States v. Monaco*, 852 F.2d 1143, 1149 (9th Cir.1988). Kimball's case is unusual, however, because the evidentiary hearings at which Harper and the undercover informants testified were centrally concerned with the disqualification of Kimball's attorney, Jack Hill. The lawyer displaced the client from the court's attention. Kimball seems to be suggesting that the testimony taken when the court considered disqualifying Hill, although officially part of the record in Kimball's case, was unfairly used against him.

Kimball first suggests that he was surprised by the existence of the testimony. This cannot be. The evidence was presented in Kimball's own case. In fact, the court specifically asked Kimball at the time of the hearings whether he had heard all of the evidence presented and he replied that he had. Kimball next suggests that he was surprised by the use of that testimony during his sentencing. But, as in *United States v. Notrangelo,* "the presentence report put [the defendant] on notice that these facts, supported by the sworn testimony of witnesses, were before the court". 909 F.2d 363, 365 (9th Cir.1990). Kimball was on notice that the fact of his marijuana smuggling was at issue during his sentencing and, by his own admission, Kimball knew of the testimony accusing him of that activity.

Kimball also argues that he was prejudiced by his inability to effectively confront the witnesses against him. At hearings concerned with disqualifying his lawyer, Kimball had no compelling motive to cross-examine witnesses who were stating and implying that he was a marijuana smuggler. His mind, it seems, was on other things. But due process is not offended at sentencing by the use of sworn testimony given in open court and liable to cross-examination. *Notrangelo*, 909 F.2d at 364–66. It follows that Kimball, who had the opportunity to confront the witnesses against him but failed to employ it, suffered no injury to his right of due process. The evidence that Kimball was involved in smuggling marijuana is reliable; Kimball knew of that evidence and had the opportunity to rebut it. At sentencing, the Due Process Clause requires no more.

AFFIRMED.