83 F.3d 430
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gordon James PARRISH, Defendant-Appellant.
 No. 95-10035.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 13, 1996.
Decided April 17, 1996.
 
 1
 Before: HALL and BRUNETTI, Circuit Judges, and WEINER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Gordon Parrish appeals his conviction in federal court of one count of aggravated sexual abuse, 18 U.S.C. §§ 1153, 2241(a)(1), and one count of sexual abuse of a minor, 18 U.S.C. § 2243(a)(1). The convictions arise from an incident in 1990 in which Parrish brutally raped a 15-year-old girl. A jury convicted Parrish on all counts, and he filed a timely appeal asserting a variety of claims.
 
 
 4
 * Parrish first challenges the admission of incriminating DNA evidence by the government. The DNA evidence was analyzed by the Arizona Department of Public Safety crime lab ("DPS Lab"). The district court conducted a pretrial hearing on the admissibility of the DNA evidence and ruled that the evidence was admissible at trial.
 
 
 5
 Parrish claims that the court and the prosecution denied him access to foundational evidence regarding the DPS Lab's DNA testing procedures, which he could have used to impeach the credibility of the lab's evidence. Furthermore, errors found by defense experts in the DPS Lab's procedures and its results in this case cast doubt upon the lab's reliability. For these reasons, Parrish contends that the district court abused its discretion in admitting the DNA evidence.[1]
 
 
 6
 Admissibility of scientific evidence is governed by the Supreme Court's ruling in Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S.Ct. 2786 (1993) (holding that the Frye test was superceded by the Federal Rules of Evidence, and Rule 702 is the "primary locus" for admissibility of scientific evidence). Before admitting expert scientific testimony the trial judge must determine whether the expert will testify to "(1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Id. at 2796. Furthermore, Daubert lists a nonexclusive set of factors the trial court may consider when evaluating admission of scientific evidence, including the known or potential error rate for the lab. United States v. Chischilly, 30 F.3d 1144, (9th Cir.1994) (summarizing the Daubert factors and applying them in the context of admission of DNA evidence analyzed by the FBI lab in a sexual assault case), cert. denied, 115 S.Ct. 946 (1995).
 
 
 7
 Forensic DNA analysis, in general, satisfies the Daubert requirements for reliability and for relevance. Parrish argues, however, that the district court could not properly evaluate the reliability of the DNA evidence in this case because the prosecution did not produce all data requested by the defense during discovery. The only potentially material information not produced to the defense was data regarding error rates for the DPS Lab. Although lack of this information may impair the district court's assessment of the lab's reliability, it is not strictly required in order to meet the conditions for admitting scientific evidence. As Daubert makes clear, the list of factors the trial court should consider is nonexclusive and may be tailored for each case. In this case there is other indicia of reliability. For example, when defense expert, Dr. Long, analyzed the population database he too found a "match" between Parrish's specimen and the crime scene samples. Furthermore, Dr. Chakraborty independently analyzed the autorads and concurred with the DPS Lab's procedures and results.
 
 
 8
 The defense apparently received all other material data it requested from the government regarding the DNA evidence, and there is no credible evidence of prosecutorial misconduct. Therefore, on these facts, we hold that the district court did not abuse its discretion when it deemed the DNA evidence sufficiently reliable.
 
 
 9
 Parrish's final argument regarding the DNA evidence is that errors found by Dr. Bakken during her analysis of the DPS Lab's procedures and results in this case suggest that the lab's work is unreliable, and thus, the district court should not have admitted the DNA evidence.
 
 
 10
 This argument must fail, however. The several "fatal" errors Dr. Bakken discovered are most appropriately described as "imperfectly conducted laboratory procedures," which go to the weight of the evidence, and not its admissibility. Chischilly, 30 F.3d at 1154. The district court found at the conclusion of the DNA hearing that these errors did not require exclusion of the DNA evidence, but that they presented a credibility issue for the jury to decide. This assessment comports with the analysis in Chischilly, and we therefore affirm the district court's decision not to exclude the DNA evidence in this case.
 
 II
 
 11
 Parrish next argues that he was denied due process because the district court did not compel the government to grant him access to the arresting officer's personnel files, and because the district court limited the defense's cross-examination of the officer.
 
 
 12
 Pursuant to Brady, the prosecution must disclose to the defense any evidence that is favorable to the accused and "material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence that may be used to impeach a witness's credibility falls within the Brady rule. United States v. Bagley, 473 U.S. 667, 676 (1985). We have held that Brady requires the government to examine the personnel files of testifying law enforcement officers to search for such material. United States v. Henthorn, 931 F.2d 29 (1991). The government's obligation to review the file arises once the defendant requests that it be produced. Id. at 30-31. The prosecution is under no obligation, however, to inspect or disclose materials not under its control. United States v. Dominguez-Villa, 954 F.2d 562, 566 (9th Cir.1992).
 
 
 13
 Parrish first alleges that he was denied due process because the prosecution delayed in producing these files to the court. We find no impropriety in the prosecution's actions. The file belonged to the Navajo Police Department, and was not originally in the federal government's custody, control, or possession. Given that, the prosecution was under no obligation to conduct a Henthorn review on a personnel file not in its hands. Dominguez-Villa, 954 F.2d at 566. Once the Assistant United States Attorney received the file, however, he reviewed it in a reasonable amount of time, and found that it contained no material information. There is simply no merit to Parrish's argument that the prosecution inappropriately delayed.
 
 
 14
 Furthermore, we also hold that the district court did not abuse its discretion in finding that the file contained no information that would be material to the defense. We reviewed the file and agree with the district court's assessment. Therefore, we affirm the district court's order denying Parrish access to Officer Bronston's personnel file.
 
 
 15
 Parrish further argues that the district court denied him his Fifth Amendment right of confrontation by limiting the cross-examination of Officer Bronston.
 
 
 16
 The Confrontation Clause of the Constitution guarantees " 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " Pennsylvania v. Ritchie, 480 U.S. 39, 53 (1987) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam)). The trial judge has discretion to exclude evidence that is irrelevant, Fed.R.Evid. 402, or relevant evidence that poses the risk of unfair prejudice or confusion of the issues, among other things. Fed.R.Evid. 403. Thus, trial court judges retain wide latitude to limit cross-examination based on these concerns. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).
 
 
 17
 The district court judge had already determined that Bronston's personnel file did not contain any information material to the defense. Given that, the judge could properly ascertain the relevance of the defense's proposed line of questioning. The circumstances surrounding Bronston's dismissal are not relevant to any issue in Parrish's case. We therefore hold that the district court did not abuse its discretion when it limited the cross-examination of Officer Bronston.
 
 III
 
 18
 Parrish's third claim is that he was denied due process when the district court refused to grant him access to the minor victim's medical and psychiatric records. The victim suffered severe psychological trauma resulting from the rape; in the ensuing years she has been hospitalized several times, and has participated in a wide range of in-patient and out-patient counseling. Parrish requested the records in order to gain evidence relevant as to the issues of misidentification, memory implantation, and competency of the victim. The hospitals produced the records to the district court, which then reviewed them in camera. After reviewing the records, the district court determined that their "probative value [was] outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," and therefore denied the defendant access to the records.
 
 
 19
 In general, the Sixth Amendment right of confrontation permits a defendant to cross-examine witnesses in order to test the believability of the witness, and the truth of his or her testimony. Davis v. Alaska, 415 U.S. 308, 316 (1974). Because some mental disorders are highly probative on the issue of credibility, federal courts may grant defendants access to witness medical and psychiatric records, so long as the information disclosed "provides[s] some significant help to the jury in its efforts to evaluate the witness's ability to perceive or to recall events or to testify accurately." United States v. Butt, 955 F.2d 77, 82 (1st Cir.1992) (citation omitted). It is within the district court's discretion to conclude that the information in the records is irrelevant, or inadmissible under Rule 403, Federal Rules of Evidence, because its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Id.; United States v. Sterling, 742 F.2d 521, 527 (9th Cir.1984) (holding that records deemed inadmissible under Rule 403 need not be disclosed to the defense), cert. denied, 471 U.S. 1099 (1985).
 
 
 20
 We have reviewed the voluminous records submitted by the two hospitals in this case, and we hold that the district court did not abuse its discretion when it chose not to grant the defendant access to these records.
 
 IV
 
 21
 At sentencing, the district court ordered Parrish to pay $88,000 in restitution to the U.S. Dept. of Indian Health Services, to cover the costs of the medical treatment provided to the victim. Parrish claims that the district court erred in imposing restitution because it did not adequately account for his ability to pay within the period of incarceration (14 years) plus the period of community supervision (5 years).
 
 
 22
 Pursuant to 18 U.S.C. § 3664(a), the district court must consider several factors when determining whether to order restitution, such as the defendant's financial resources, financial needs, and earning ability. The sentencing court need not make specific factual findings regarding these factors. United States v. Ramilo, 986 F.2d 333, 335 (9th Cir.1993). However, "if a district court fails to consider a defendant's ability to pay, the court abuses the discretion afforded it under [section 3664]." United States v. Smith, 944 F.2d 618, 623 (9th Cir.1991), cert. denied, 503 U.S. 951 (1992). Although the court may impose restitution upon a presently indigent defendant, according to Ramilo the record must reflect some evidence of the defendant's future ability to pay. Ramilo, 986 F.2d at 336; United States v. Miguel, 49 F.3d 505, 511 (9th Cir.), cert. denied, 115 S.Ct. 2628 (1995).
 
 
 23
 Evidence presented shows that Parrish is a skilled welder and automotive mechanic. He has been self-employed, performing auto body work and automotive repair since 1979. He is well known in his area as a good mechanic, and he anticipates expanding his business one day, hoping eventually to open his own automotive repair shop.
 
 
 24
 Parrish is a skilled craftsman, and he will quite likely be employed again once he is released. There is little doubt that he will be able to pay back at least some of the restitution ordered. Therefore, we hold that there is some evidence of Parrish's future ability to pay, and the district court did not abuse its discretion.
 
 V
 
 25
 When sentencing Parrish, the district court judge referred to three alcohol related arrests listed in the Presentence Report, one of which occurred before the rape, and two of which occurred after. Parrish argues that the court abused its discretion in considering this information, because the information is not relevant to his conviction.
 
 
 26
 In general, a district court has wide latitude to consider a variety of information during sentencing, enabling the court to "insure that the punishment fits not only the crime, but the individual defendant as well." United States v. Safirstein, 827 F.2d 1380, 1384-85 (9th Cir.1987). However, the court's discretion is not without limits. The Fifth Amendment guarantee of due process prohibits the court from relying on information that is materially false or unreliable. United States v. Ayers, 924 F.2d 1468, 1481 (9th Cir.1991). If the district court relied on such information, then we have held that remand for resentencing is required. Safirstein, 827 F.2d at 1385. Furthermore, "unfounded assumptions or groundless inferences although based upon proper and accurate information may not, consistent with due process, form the basis of sentence." Id. Rule 32, Federal Rule of Criminal Procedure, sets forth the procedure for resolving objections to information contained in the presentence report and relied on at sentencing. When challenging a sentencing decision on either due process or Rule 32 grounds, the defendant bears the burden of first showing that the disputed information is false, or unreliable because it lacks " 'some minimal indicium of reliability beyond mere allegation.' " United States v. Kimball, 975 F.2d 563, 567 (9th Cir.1992) (quoting United States v. Ibarra, 737 F.2d 825, 827 (9th Cir.1984)), cert. denied, 507 U.S. 918 (1993).
 
 
 27
 The district court judge made clear that he did rely upon the disputed information, and Parrish's attorney objected to its use, claiming that the information is "questionable." The district court gave Parrish the opportunity to challenge the information included in the presentence report. However, Parrish put on no evidence proving that the police reports the court relied upon were false or unreliable. Nor did Parrish himself make any statement alleging that the reports were not accurate. In fact, Parrish's complaint seems merely to be that the court should not have relied on the information because it is irrelevant; nowhere does he suggest that the information is false. Therefore, Parrish did not create any factual dispute as to the accuracy of the information. Bare allegations that the information is false do not establish its unreliability. Kimball, 975 F.2d at 567. Thus, Parrish's claim that the court relied on false or unreliable information must fail. Furthermore, because the information relied upon was not controverted, the court had no duty to issue findings.
 
 
 28
 Finally, we also find that the district court did not draw unreasonable inferences from the information in the presentence report. Parrish's behavior suggested to the court that his conduct on the night of the rape was not aberrant. Although drinking and driving with minors in the car is not necessarily evidence that the rape was not aberrant, the circumstances leading to the rape--being out drinking with a minor female--seem not to be aberrant for Parrish. Therefore, the district court did not abuse its discretion when it relied upon this information when sentencing Parrish.
 
 VI
 
 29
 For the foregoing reasons, we affirm the district court on all issues.
 
 
 30
 AFFIRMED.
 
 
 
 *
 Hon. Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Parrish also asserted a claim of prosecutorial misconduct. Upon reviewing the record below we found no credible evidence of any misconduct by the government in this case