**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

CENIOUS BREWSTER,

*Defendant - Appellant*.

No. 23-329

D.C. No.
4:22-cr-00208-
JST-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted July 16, 2024
San Francisco, California

Filed September 12, 2024

Before: Milan D. Smith, Jr., Mark J. Bennett, and Anthony
D. Johnstone, Circuit Judges.

Opinion by Judge Bennett

# SUMMARY[*]

## Criminal Law

The panel affirmed a sentence imposed following the defendant's guilty plea to one count of being a felon in possession of a firearm.

The panel held that the district court properly applied an enhancement under U.S.S.G. § 3C1.2 for reckless endangerment during flight. Assuming without deciding that the guideline requires that a defendant's flight endanger a specific person, the panel concluded that the district court did not clearly err in finding that the defendant's flight put at least one motorist at substantial risk of serious bodily injury.

The panel held that the defendant forfeited any argument that the district court misunderstood his requested downward departure.

The defendant argued that the district court violated his due process rights by finding that data from the Sentencing Commission's Judiciary Sentencing INformation (JSIN) online tool was sufficiently reliable to consider at sentencing. The panel held that the district court did not err, much less clearly err, in finding that the JSIN data was reliable. The JSIN data came from a reliable source and was designed specifically for judges to use during sentencing to fulfill their obligations under 18 U.S.C. § 3553(a)(6) to consider the need to avoid unwarranted sentence disparities.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The JSIN data was also corroborated by other unchallenged evidence. The defendant offered no evidence to contradict or materially undermine JSIN's reported average and median sentences, and the district court did not abuse its discretion in denying an evidentiary hearing on the reliability of the data.

The panel explained why it rejected the defendant's motion for supplemental briefing on whether his conviction violated the Second Amendment under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022): the defendant could have raised his *Bruen*-based challenge in the district court, and offered no good cause supporting why he failed to do so.

## COUNSEL

Simon de Carvalho (argued), Attorney; Ismail J. Ramsey, United States Attorney; United States Department of Justice, Washington, D.C.; Andrew Paulson, Assistant United States Attorney, United States Department of Justice, Office of the United States Attorney, Oakland, California; Merry J. Chan, Assistant United States Attorney, United States Department of Justice, Office of the United States Attorney, San Francisco, California; for Plaintiff-Appellee.

Steven G. Kalar (argued), Kalar Law Office, Berkeley, California, for Defendant-Appellant.

**OPINION**

BENNETT, Circuit Judge:

Appellant, Cenious Brewster, led officers on a high-speed chase, which was recorded on the officers' dashcam. Brewster crashed into a building shortly after the chase began. He was arrested, and a firearm was found in his vehicle. Brewster pleaded guilty to one count of being a felon in possession of a firearm, and the district court sentenced him to 46-months' imprisonment.

Brewster challenges his sentence, arguing that the district court (1) erred in applying the reckless endangerment during flight enhancement under the United States Sentencing Guidelines ("U.S.S.G.") § 3C1.2; (2) misunderstood his request for a downward departure based on circumstances that allegedly justified his flight; and (3) violated his due process rights by finding that data from the Sentencing Commission's Judiciary Sentencing INformation ("JSIN") online tool was sufficiently reliable to consider at sentencing. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and we affirm. We also explain why we rejected Brewster's motion for supplemental briefing on whether his conviction violated the Second Amendment under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

**I**

Around midnight on June 4, 2021, two California Highway Patrol ("CHP") officers saw a car pass their patrol vehicle at a high rate of speed. The car, which was being driven by Brewster, appeared to be traveling more than 100 miles per hour in a fifty-miles-per-hour zone. The officers

followed Brewster, who made several unsafe lane changes. After the officers activated their lights, Brewster exited the freeway and came to a stop.

The officers exited their vehicle and shouted to Brewster to turn off the car. Brewster failed to comply and instead took off, making a sudden U-turn across multiple lanes. The officers got back into their vehicle and pursued Brewster. The dashcam video shows an approaching vehicle stop, apparently to avoid hitting Brewster and the pursuing officers. Less than twenty-five seconds after the chase began, Brewster drove over a raised center median and crashed into a vacant part of a building and an electronic crosswalk signal at an intersection. Moments after the crash, the video shows a car at that intersection with its headlights on.

Brewster tried to escape on foot but was eventually arrested. At the time of his arrest, Brewster had six adult felony convictions, including for burglary, robbery, a hit and run resulting in death or injury, and recklessly evading arrest. The officers found a loaded Beretta 9mm handgun on the driver's side floorboard of Brewster's car. Based on the handgun and his prior felonies, the government charged Brewster with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Brewster pleaded guilty.

The Amended Presentence Investigation Report ("PSR") calculated Brewster's total offense level to be fifteen. The PSR used U.S.S.G. § 2K2.1[1] to establish the base offense level, and applicable adjustments included a two-level

---

[1] U.S.S.G. § 2K2.1 sets forth the base offense level for the unlawful receipt, possession, or transportation of firearms or ammunition.

enhancement for reckless endangerment during flight under U.S.S.G. § 3C1.2.  Based on the total offense level of fifteen and Brewster's criminal history category of VI, the PSR calculated a guidelines range of 41 to 51 months.

At the district court's request, the PSR also included comparative sentencing data from the Sentencing Commission's JSIN tool.  The JSIN tool is a publicly available "online sentencing data resource specifically developed with the needs of judges in mind," as it "provides quick and easy online access to sentencing data for similarly situated defendants, including the types of sentences imposed and average and median sentences."  U.S. Sent'g Comm'n, *2021 Annual Report* 9 (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2021/2021-Annual-Report.pdf [https://perma.cc/4Y2K-RWPP] ("2021 Annual Report").  "The JSIN tool enables a user to obtain information about offenders sentenced under the same primary guideline,[2] and with the same Final Offense Level and Criminal History Category selected, for the past five fiscal years."  U.S. Sent'g Comm'n, *Judiciary Sentencing Information*, https://www.ussc.gov/guidelines/judiciary-sentencing-information [https://perma.cc/Y9Y3-JHMP].  The tool was used more than 3,500 times in the first four

---

[2] The "primary guideline" is the "guideline that produces the highest adjusted Final Offense Level based on the Base Offense Level, all applicable Specific Offense Characteristics, and Chapter Three Adjustments prior to the application of multiple count units."  U.S. Sent'g Comm'n, *Judiciary Sentencing Information*, https://www.ussc.gov/guidelines/judiciary-sentencing-information [https://perma.cc/Y9Y3-JHMP].

months after its launch in September 2021.[3]  2021 Annual Report at 9.

The PSR included this JSIN data:

> During the last five fiscal years (FY2017-2021), there were 495 offenders whose primary guideline was §2K2.1, with a Final Offense Level of 15 and a Criminal History Category of VI, after excluding offenders who received a §5K1.1 substantial assistance departure.  For the 490 offenders (99%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 45 month(s) and the median length of imprisonment imposed was 42 month(s).

Brewster raised several objections to the PSR.  As relevant here, he argued that the enhancement for reckless endangerment during flight was inapplicable because it requires that an actual person other than the defendant be put

---

[3] In March 2023 the Federal Judicial Center began a two-year pilot study of the effect of JSIN data in presentence investigation reports.  U.S. Courts, *Judiciary Studies of Online Tool in Presentence Reports* (Apr. 28, 2023), https://www.uscourts.gov/news/2023/01/25/judiciary-studies-use-online-tool-presentence-reports [https://perma.cc/FRN8-VFKF].  Thirty-one districts were selected for the pilot group, including two from the Ninth Circuit: the Eastern and Western Districts of Washington.  *Id.*  In the pilot districts, "probation officers will include information from the JSIN tool in their presentence reports for two years, beginning on March 27."  *Id.*  "In districts assigned to the control group, probation officers refrain from including JSIN data in presentence reports during the two-year study period, although judges and litigants may still use and consider the JSIN tool as they deem appropriate."  *Id.*

in danger, and the government identified no such person.  He also argued that, even if the guideline were technically applicable, the court should depart or vary downward because certain circumstances made it reasonable for him to fear for his life, and he was thus justified in fleeing.

Brewster also objected to the district court's consideration of the JSIN data.  Brewster's primary objection was that the Sentencing Commission's methodology in generating the JSIN data, including its exclusion of probationary and fine-only sentences, skewed the reported custodial sentences higher.  He also argued that it would be improper for the court to consider the data without holding "a sentencing hearing where a defense statistical expert [could] explain the fatal shortcomings of this 'quick and easy' data set," and without making the underlying dataset available to Brewster so that he could test "the accuracy of [the] JSIN data."

The district court denied Brewster's objection to the reckless endangerment during flight enhancement.  After viewing the dashcam video on the bench, the court stated:

> I'm going to make the factual finding . . . .
>
> I will find that there were numerous drivers on the road over the course of travel that the defendant traveled, and that that is sufficient to support a finding of reckless endangerment . . . .
>
> . . . I think there is a sufficient basis in fact for the Court to draw the inference that Mr.

Brewster's car was reasonably close to that driver that I identified at I think it was 2:21.[4]

But even if that's not correct, I just think there were people on the road at that hour, the defendant was clearly out of control, and he came close enough to those persons that the finding is appropriate. So that's the finding the Court is going to make.

The court also rejected Brewster's request to depart or vary downward based on circumstances that allegedly justified his flight. In doing so, the court characterized the request as a "request . . . [to] *vary*" only. (emphasis added). But rather than object to the court's characterization, Brewster's counsel confirmed that the court had correctly characterized and adequately addressed Brewster's request:

[Court:] First, I'm going to respond to Mr. Kalar's request that I vary explicitly from the sentencing guidelines for the reason that Mr. Brewster is black and he was pulled over by law enforcement after midnight and they brandished their sidearms. As I understand it, that's the request.

I reject that argument, and I overrule— and I deny the request.

. . . .

---

[4] There is no car visible at the 2:21 timestamp in the video. But we view the district court's reference to the timestamp as a mere slip of the tongue because, in context, we are confident that the district court was referring to the car at the intersection, which is visible at 2:12 in the video.

[Court:] The way we are going to solve whatever problems we have with policing and race relations in this country is not to excuse the reckless endangerment of the community, and so I deny the request, Mr. Kalar.

I think you wanted to say something earlier.

Mr. Kalar: No, Your Honor. *I think the Court correctly characterized it*. It actually was a motion for a departure because the situation was not anticipated by the commission in the guidelines, and I won't argue it anymore. I understand the Court's ruling and *thank you for expressly addressing it*.

(emphasis added).

The court also rejected Brewster's objections to the JSIN data. The court believed that the data was "helpful" because the court thought it "very important . . . to give due weight to the consideration under Section 3553(a) that the Court avoid unwanted sentencing disparity." The court made clear that it relied on the JSIN data: "I wish it to be clear on the record that I have relied on the JSIN information in reaching whatever sentence I impose and that I have not engaged in the process of considering what an appropriate sentence would be absent that information." But the court added that its consideration of the JSIN data accounted for its limitations: "I am well aware of the limitations of [the JSIN] data. . . . I will consider the JSIN data in the light of all of the criticisms contained in [defense counsel's]

memorandum, and I will consider those criticisms in determining the weight to be given to the JSIN information."

In explaining why the court relied on the JSIN data, it noted that the data was consistent with information from another Sentencing Commission tool called the Interactive Data Analyzer ("IDA").[5] The district court explained that the IDA is publicly available and "can limit the dataset by circuit . . . and by district." According to the district court, for "years 2019, 2020, and 2021," the IDA showed that for similarly situated defendants in the Ninth Circuit "the average sentence was 47 months and the median was 41 months," and in just the Northern District of California "the average sentence was 46 months and the median was 42 months." The court concluded that it was "not aware of any other source of information that is even remotely as robust [as the JSIN or IDA data] that would assist the Court in discharging its obligations under section 3553(a)."

After resolving Brewster's objections, the court calculated the same guidelines range as the PSR: 41 to 51 months. The court imposed a mid-guidelines sentence of 46 months and three years of supervised release. Brewster timely appealed, challenging his sentence.

## II

"We review the district court's factual findings for clear error, its construction of the United States Sentencing Guidelines de novo, and its application of the Guidelines to

---

[5] "The Interactive Data Analyzer (IDA) is an online tool that can be used to explore, filter, customize, and visualize federal sentencing data." U.S. Sent'g Comm'n, *Interactive Data Analyzer*, https://www.ussc.gov/research/interactive-data-analyzer [https://perma.cc/3NMN-5Y9X]. Brewster did not object to the district court's reliance on the IDA data.

the facts for abuse of discretion." *United States v. Harris*, 999 F.3d 1233, 1235 (9th Cir. 2021). "A district court's determination of whether a defendant's conduct constituted reckless endangerment during flight is a factual finding that we review for clear error." *United States v. Young*, 33 F.3d 31, 32 (9th Cir. 1994). "A finding is clearly erroneous if it is illogical, implausible, or without support in the record." *United States v. Torres-Giles*, 80 F.4th 934, 939 (9th Cir. 2023) (quoting *United States v. Burgos-Ortega*, 777 F.3d 1047, 1056 (9th Cir. 2015)), *cert. denied,* 144 S. Ct. 616 (2024).

We review forfeited errors for plain error. *See United States v. Jimenez*, 258 F.3d 1120, 1124 (9th Cir. 2001). Under plain-error review, there must be an obvious error that affects substantial rights. *Id.* The error must also "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

We review for clear error a district court's determination that hearsay evidence is substantively reliable enough to be considered at sentencing. *See United States v. Franklin*, 18 F.4th 1105, 1125 (9th Cir. 2021) ("A determination of substantive reliability . . . is an essentially factual question that we review for clear error.").

## III

### A

Section 3C1.2 provides: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." U.S.S.G. § 3C1.2. According to Brewster, the plain language of this

guideline requires that a defendant's flight endanger "another person," meaning a specific person. Under that interpretation, Brewster argues that the district court erred in applying the guideline because no specific person was put in danger during his flight. We disagree.

Even assuming without deciding that Brewster's interpretation of § 3C1.2 is correct, the district court made a factual finding that Brewster's flight created a substantial risk of bodily injury to at least one specific person.[6] After viewing the dashcam video, the district court found that Brewster was "clearly out of control" and "there were numerous drivers on the road over the course of travel that the defendant traveled," including a car that was "reasonably close" to Brewster when he crashed at the intersection. The district court reasonably inferred that Brewster was "not more than 30 feet" away from this car when he crashed. The district court determined that those circumstances supported that Brewster's flight created a substantial risk of injury to another person. The district court's findings are supported by the dashcam video.

The video shows at least two motorists near Brewster's vehicle when he made dangerous maneuvers in fleeing from the officers. At the start of the chase, Brewster makes a sudden U-turn in front of another vehicle. That vehicle stops to avoid hitting Brewster and the pursuing officers. Brewster then drives over a raised median onto the sidewalk and crashes into a building near an intersection. Moments after the crash, the video shows a car stopped at the intersection

---

[6] We assume that Brewster has sufficiently raised a challenge to the district court's findings, even though his briefing contains seemingly conflicting statements, including stating that he "does not challenge any of the factual conclusions of the District Court in this appeal."

with its headlights on.  Considering Brewster's reckless driving and the proximity of the car at the intersection to the crash,[7] the district court did not clearly err in finding that Brewster's flight put *at least* one motorist at substantial risk of serious bodily injury.

Brewster's primary argument is that the video is insufficient to support the district court's findings because it conflicts with Brewster's own declaration in which he stated that "there were no other cars in the immediate area that were affected by my driving."  But the district court rejected Brewster's account: "I was hoping not to have to say this.  I don't believe Mr. Brewster. . . .  He is not a credible reporter."  And the court properly rejected his self-serving statements because they were "utterly discredited" by the video.  *Scott v. Harris*, 550 U.S. 372, 379–80 (2007) (holding that a court should reject an account that is "utterly discredited," *id.* at 380, by a video when there is no allegation that the video was altered or fails to depict what actually happened).

## B

Brewster challenges the district court's denial of his request for a downward departure or variance based on circumstances that allegedly justified his flight.  He argues that the district court misunderstood his request because the

---

[7] Brewster argues that this car was not close enough to be in danger because we do not know exactly when it arrived at the intersection.  But we do know that the car was at the intersection within seconds after the crash, and thus the district court could reasonably conclude that the motorist was in substantial risk of injury given their proximity to the crash and Brewster's "clearly out of control" driving.

court mischaracterized it as a request for a variance only[8] and believed that it was based solely on Brewster's race.

Brewster forfeited any argument that the court misunderstood his requested departure. Rather than object to the district court's characterization of his request, Brewster's counsel stated that the court "correctly characterized it" and "address[ed] it." Thus, Brewster's arguments are subject to plain-error review. *See Jimenez*, 258 F.3d at 1124–25 (reviewing the district court's conclusion that the defendant committed a prior aggravated felony for plain error because the defendant "not only failed to object to the district court's finding of a prior aggravated felony, but confirmed the accuracy of the PSR," *id.* at 1124, which listed a qualifying prior aggravated felony). Because Brewster makes no attempt to satisfy the plain-error standard, his challenge fails.

## C

Brewster's primary argument regarding the JSIN data is that the district court's reliance on it violated his due process rights because the JSIN data was not sufficiently reliable. He also argues that the district court erred in denying his request for an evidentiary hearing to put on a defense statistical expert to challenge the JSIN data's reliability and

---

[8] A "departure" is "typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves. It is frequently triggered . . . by other factors that take the case 'outside the heartland' contemplated by the Sentencing Commission when it drafted the Guidelines for a typical offense." *United States v. Cruz-Perez*, 567 F.3d 1142, 1146 (9th Cir. 2009) (citations omitted). "A 'variance,' by contrast, occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a)." *Id.*

in denying his request for the exact dataset used to generate the JSIN data.

To be clear, Brewster does not challenge the relevancy of the JSIN data, and rightfully so. As the district court correctly pointed out, 18 U.S.C. § 3553(a)(6) requires the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The JSIN tool enables judges to fulfill this obligation, as it provides them with sentencing data for similarly situated defendants. *See* 2021 Annual Report at 9. Because JSIN data is highly relevant in sentencing, it would be inconsistent with § 3553(a)(6) for us to conclude that sentencing courts may not consider JSIN data, assuming such data is sufficiently reliable. *See* U.S.S.G. § 6A1.3 cmt. ("Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy.").**[9]**

---

[9] While the district court did not make an explicit reliability finding, it expressly relied on the JSIN data and thus implicitly found that it was reliable. *See Franklin*, 18 F.4th at 1127 (determining that the district court made an implicit reliability finding and reviewing such finding for clear error). The court's explanation in rejecting Brewster's challenge further supports that the court made an implicit finding:

> The information is in the report because the judges of the Northern District of California asked the Probation Office to include it because the judges think it's helpful.
>
> . . . .
>
> The reason I use it is because it is very important to me to give due weight to the consideration under Section 3553(a) that the Court avoid unwanted sentencing disparity.

"[D]ue process requires that a defendant be sentenced on the basis of accurate information.  Thus, a district court may consider any relevant information, 'provided that the information has sufficient indicia of reliability to support its probable accuracy.'"  *United States v. Alvarado-Martinez*, 556 F.3d 732, 734–35 (9th Cir. 2009) (citation omitted) (quoting U.S.S.G. § 6A1.3(a)).  "Due process requires [only] some minimal indicia of reliability . . . ."  *United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir.), *amended,* 992 F.2d 1015 (9th Cir. 1993).  The defendant has the burden to show that the challenged evidence lacks minimal indicia of reliability, *see United States v. Kimball*, 975 F.2d 563, 567 (9th Cir. 1992), and on appeal, the defendant must show that the district court's substantive reliability finding was clearly erroneous, *see Franklin*, 18 F.4th at 1125.

The Sentencing Commission is a presumptively reliable source, and Brewster offers no reason to conclude otherwise.  "Congress established the [Sentencing] Commission to formulate and constantly refine national sentencing standards."  *United States v. Henderson*, 649 F.3d 955, 959 (9th Cir. 2011).  The Sentencing Commission "hold[s] a key role in the criminal system," *id.*, and is "guided by a professional staff with appropriate expertise," *id.* (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)).  That the Supreme Court has regularly relied on data from the Sentencing Commission supports that it is a presumptively

---

. . . .

Whatever imperfections there may be in the JSIN data or the Interactive Data Analyzer, the fact remains that I am not aware of any other source of information that is even remotely as robust that would assist the Court in discharging its obligations under section 3553(a).

reliable source. *See, e.g.*, *Molina-Martinez v. United States*, 578 U.S. 189, 199 (2016) (relying on the "Commission's statistics" to show "the real and pervasive effect the Guidelines have on sentencing"); *Peugh v. United States*, 569 U.S. 530, 543–44 (2013) (relying on Sentencing Commission data to show that the Guidelines influence the sentences imposed by judges).

Brewster argues that the Sentencing Commission itself has suggested that the JSIN platform is unreliable. That is untrue. The Sentencing Commission has endorsed the JSIN platform as a reliable source to be used by judges during sentencing. The Sentencing Commission describes the JSIN tool as "an online sentencing data resource specifically developed with the *needs of judges* in mind," and as an "expan[sion] [of] the Commission's longstanding practice of providing sentencing data *at the request of federal judges* by making some of the data provided through . . . special requests more broadly and easily available." 2021 Annual Report at 9 (emphasis added).

Further, the IDA information—which Brewster has never challenged—supported that the JSIN data was reliable. The JSIN tool reported that for defendants similarly situated to Brewster the average sentence was 45 months and the median sentence was 42 months. The IDA reported substantially similar results: for defendants similarly situated to Brewster "the average sentence was 46 months and the median was 42 months" in the Northern District of California, and within the Ninth Circuit more broadly "the average sentence was 47 months and the median was 41 months." The consistency between the IDA information and the JSIN data bolsters the district court's finding that the JSIN data was sufficiently reliable. *See Petty*, 982 F.2d at

1369 (affirming a district court's reliability finding because it was supported by corroborating evidence).

That the JSIN tool, and its resulting data, comes from a presumptively reliable source, was designed specifically to be used by judges during sentencing, and was corroborated by other unchallenged evidence, all supports that the JSIN data was reliable. The district court therefore did not err, much less clearly err, in finding that the JSIN data was sufficiently reliable.

Brewster's objections below raised some possible limitations as to the JSIN data, but his objections did not remotely compel the conclusion that the JSIN data was unreliable. The gravamen of Brewster's objections was that the Sentencing Commission's methodology in generating the JSIN data, including its exclusion of probationary and fine-only sentences, skewed the reported custodial sentences higher.[10] This general contention in no way contradicted the JSIN data. While the JSIN tool's exclusions—which are known, as they are disclosed by the JSIN tool itself—may limit the persuasiveness or weight of the JSIN data, they do not render the JSIN data unreliable. And here, the district court properly accounted for the data's limitations in assessing its weight:

> I am well aware of the limitations of that [JSIN] data. And when I impose sentence in this case, I will consider the JSIN data in the light of all of the criticisms contained in [defense counsel's] memorandum, and I will

---

[10] This is also Brewster's primary argument on appeal.

consider those criticisms in determining the
weight to be given to the JSIN information.

Moreover, Brewster offered nothing to materially
undermine the JSIN data's reliability. For example, using
publicly available sentencing data, Brewster could have tried
to show that the JSIN's reported average and median
sentences were so inaccurate that they lacked any indicia of
reliability.[11] Brewster's failure to offer any contradictory
evidence, reinforces our conclusion that the JSIN data was
reliable. *See Kimball*, 975 F.2d at 567 (holding that the
defendant had failed to show that the evidence was false or
unreliable because he "simply allege[d] that [it was] false"
and "offered no evidence to contradict" it).

Brewster also cannot show that the district court abused
its discretion in denying an evidentiary hearing on the
reliability of the JSIN data. *See United States v. Baker*, 894
F.2d 1083, 1084 (9th Cir. 1990) (reviewing the denial of an
evidentiary hearing for abuse of discretion). We have held
that "it is not an abuse of discretion to sentence a defendant
without an evidentiary hearing if the trial court gives the
defendant an opportunity to rebut allegations in the
presentence report 'by allowing defendant and his counsel to
comment on the report or to submit affidavits or other
documents[.]'" *Id.* at 1084–85 (quoting *United States v.*

---

[11] Brewster's own statements show that he had access to sufficient
publicly available data to challenge the JSIN's reported average and
median sentences. According to Brewster, "[t]he vast sentencing
datasets used by the Commission for the creation of the Guidelines
themselves are publicly available and are constantly evaluated and tested
by the federal defense bar." (emphasis omitted). He also claimed that
"[t]he defense bar and the Sentencing Resource Counsel analysts have
tried to replicate JSIN."

*Petitto*, 767 F.2d 607, 611 (9th Cir. 1985), *overruled on other grounds by United States v. Fernandez-Angulo*, 897 F.2d 1514, 1517 & n.5 (9th Cir. 1990) (en banc)). As discussed above, Brewster had an opportunity to rebut the JSIN data with publicly available sentencing data, and he failed to do so.

We also reject Brewster's claim that, to challenge the JSIN data's reliability, he needed the precise underlying dataset. Again, Brewster had access to publicly available sentencing data that he could have used to challenge the JSIN data. Further, Brewster identifies no authority to support that, even when a defendant has access to other information that could be used to challenge the accuracy of a government report, a sentencing court must still compel the disclosure of the report's underlying dataset.[12]

In sum, the district court did not err, much less clearly err, in finding that the JSIN data was reliable. Thus, perforce, it bore some minimal indicia of reliability. The JSIN data came from a reliable source designed specifically for judges to use during sentencing to fulfill their obligations under § 3553(a)(6). The JSIN data was also corroborated by other unchallenged evidence. Finally, even though he could have, Brewster offered no evidence to contradict or materially undermine JSIN's reported average and median sentences.

## D

After briefing was completed, Brewster moved for supplemental briefing on whether his conviction under 18

---

[12] We do not mean to suggest that there would be any circumstance in which a sentencing court would need to compel the disclosure of any datasets underlying JSIN data.

U.S.C. § 922(g)(1) for being a felon in possession of a firearm violated the Second Amendment under *Bruen*. We denied the motion because no good cause supported Brewster's failure to raise his *Bruen*-based challenge below. *See United States v. Ghanem*, 993 F.3d 1113, 1120 (9th Cir. 2021) ("[A] failure to timely raise a pretrial objection required by [Federal Rule of Criminal Procedure] 12, 'absent a showing of good cause,' constitutes a waiver—we will not review the objection, even for plain error." (quoting *United States v. Guerrero*, 921 F.3d 895, 898 (9th Cir. 2019))); Fed. R. Crim. P. 12(b)(3)(B) (identifying "a defect in the indictment or information" as an objection that "must be raised by pretrial motion").

The Supreme Court issued *Bruen* in June 2022—more than three months before the district court accepted Brewster's guilty plea. And as pointed out by the government, defendants in this circuit started making *Bruen*-based challenges shortly after *Bruen*'s issuance. *See, e.g.*, *United States v. Ramos*, No. 2:21-CR-00395-RGK-1, 2022 WL 17491967, at *1 (C.D. Cal. Aug. 5, 2022) (denying the defendant's argument that his conviction for being a felon in possession of a firearm was unconstitutional under *Bruen*). Brewster therefore could have raised his *Bruen*-based challenge in the district court. Because Brewster's motion offered no good cause supporting why he failed to make the *Bruen*-based challenge below, we denied the motion.

## IV

We affirm Brewster's sentence. The district court properly applied the reckless endangerment during flight enhancement under U.S.S.G. § 3C1.2. Brewster forfeited his argument that the district court misunderstood his request for a downward departure, and he demonstrates no plain

error to overcome such forfeiture. Finally, the district court did not err in finding that the JSIN data was reliable.

**AFFIRMED.**